The next case is 082627, James Spear v. Jerome Karp et al. Will the attorneys who are arguing this case please step up and identify yourself. For the record. Nick Jeroulis on behalf of Chicago Community Bank. And who's going to take the initiative with regard to the defendants? Sure, as long as I would hope you're not going to overlap. But who's going to go first, do you think? Counsel first. Very good then. Why don't we have the plaintiff, in this case the plaintiff, as well as the appellant. Good morning, Your Honor. You've all heard the admonitions and so on before, so we don't have to repeat your time. Again, I don't mind telling you this case has, if not complexity, some degree of novelty with this member of the panel. At any rate, so you have to indulge me or us as the case may be, to be a little more expository than you would ordinarily think you would be, let's say if this were a routine contract or a business or tort case. There are several issues that are here on appeal, Your Honor. The focal issues are with regard to the entirety's property interest that the Carps had. Well, I think, if I might take the liberty, the focal issues ultimately, if not at the beginning of your argument, have got to be whether the trial judge was correct in his determination that this case was not ripe for declaratory judgment because no foreclosure action was brought. Initially, that's why the first complaint was dismissed. And then the first amended complaint was filed in which the foreclosure action was joined as count seven to that complaint. And, nevertheless, the complaint in its entirety was dismissed by the court, which we felt was inappropriate for a variety of reasons. First of all, we believe that there were, in fact, fraudulent transfers that took place under the Uniform Fraudulent Transfer Act as set forth in the State of California. But you're not going to get a fraudulent transfer out of this case unless you show that the assets went to that there was no entitlement by the defendants to the assets before the transfer which they tried to accomplish through the transfer. In other words, if the transfer does not mask a liability into an entitlement, then there would be no fraudulent transfer. If they would have originally been entitled, then the fact that they then structured a transfer where their original entitlement is emerges through the transfer, the transfer is not going to be fraudulent. So that, in effect, if this was an entirety to start with and wound up as an entirety, you have no fraud. Your Honor, if the court believes that the joint tenants in entirety's property have the ability to use that joint tenancy as a bank to then reach out and deal with the equity interest in that property for the benefit of one, not both. Let me ask you, how fast and firm is the rule in Illinois that the assets of a tenancy by entirety have got to include the element of homestead? So that once that element of homestead is dissipated, that the tenancy by entirety is broken. Because the cases that you've cited from Southern and from Virginia and so on, they are more liberal to the extent that the proceeds of a property held in entirety, namely the homestead, retain their character of being a tenancy by the entirety. Now, is that also the case in Illinois? Because I haven't seen anybody argue otherwise. When you argue bleeding, you don't argue the fact that it's no longer a homestead. In fact, you invite us to transfer the character of homestead to the Florida property. We don't have guidance in the state of Illinois that tells us what we can do. As far as I've been able to find in my research, what we can do with regard to the proceeds of the entirety's property. We referred to this Court cases that we were able to locate in other jurisdictions and to distinguish those cases by way of saying, these are circumstances and the ones that we've been able to find. What you've emphasized in those cases, in educating us to those cases, is the requirement of intent or at least the impact of an intent to separate. Yes. But other than that, there is no bleeding issue in those cases, even though there are facts that lend themselves to a bleeding out contention. Those cases don't deal with exactly the situation we have. But they do deal with a principle that I think this Court needs to address so that the folks in Illinois have guidance. Is entirety's property, are the entirety's joint owners permitted to move equity, whether that be in the form of cash or an encumbrance or a mortgage, out of the entirety's property and into the hands of one and for the use solely of one of those. Is that easy for us by conceding or urging that the L Trust, even though the transfers to the L Trust, the beneficial interest still remain in the marital couple? So have they really transferred it to a third party as such? If, in fact, it still retains the joint tenancy, so to speak of, at least at the beneficial level of a marital property? If Your Honors believe that that is the law in the State of Illinois, that if that intent follows and, therefore, that that's going to be part and parcel of the So what choice do we have since the cases that you cite to us make it very clear that the conveyance of a tenancy by the entirety to one of the spouses does not disrupt the tenancy by entirety. And, evidently, as a matter of law, retains the implied use and benefit of both parties. If it was the intent to do that on the pleadings here. Well, why should we think otherwise here? Well, first of all, we haven't had any testimony. There hasn't been an opportunity yet to what the intent of the parties were. We have the well-pleaded allegations of the complaint and the motion to dismiss and the assertion that they never intended. The affidavit submitted in the record below, which didn't really go to the 2619 motion, but simply tried to controvert the allegations of the complaint, was, no, they weren't intending to use the Florida properties or Homestead property. Why does that help? Why does it help you? Because you want to counteract the release of the mortgage later on, but you don't need to do it that way because you claim once it's broken, it's like Humpty Dumpty. You can't simply revert back to its original status once you've destroyed that status. That would be my argument. So if that's the case, the fact that the Florida property is or is not going to be an entirety's property shouldn't make a difference. But in point of fact, if it wasn't going to be a tenancy by entirety, a number of things could happen. Maybe at that point you've bled out because you've in fact conveyed it into a different, into a tenancy in common or what have you. Or also, you would not have destroyed your right to proceed to collect your debt on the Florida property to register your judgment in Florida. And I'm kind of wondering, not that I'm trying to help you litigate your case in any sense, because believe me, I don't carry any insurance and I would need a lot to give advice in this case. But why didn't you go to Florida? As a matter of fact, our judgment was recorded in Florida. It was recorded in Florida. But now you've ruined it in Florida because you now have a judicially estopped from saying it's anything other than a tenancy by entirety until you get an adjudication somewhere. So you better hope we rule against you. I'm not able to address that, Your Honor. I don't believe that there is an estoppel. But here's the issue. Either when these parties made a mortgage for the benefit of one of the joint tenants at the time that that took place in 2006 and they essentially made a transfer. Who says it's for the benefit of one of the joint tenants? Why isn't it for the benefit of both? Because you're transmitting it to a third entity, the L Trust, which theoretically at least bears its name from Linda, who's a daughter. Let's start with the premise, the fact that the note here was signed by Linda Carpenter, not by both. The mortgage was made by both of the joint tenants. If the entirety's property was severed at that point, then the issue becomes whether or not we had a right to a declaration that in fact we could proceed as to that property. Now, I understand Judge Epstein said you don't go there. You go there by filing your foreclosure action. So that's why the First Amendment complaint did that. We filed the foreclosure action. The issue could have been reached then, but was not because the case was dismissed. Next question becomes, assuming for the moment that there was a transfer, does the bleed-out theory have any viability? When the Carps transferred that property, the equity in that property to Florida, aided by the bank in doing so, did they? Is the bleed-out theory a construct of your invention? Does it find reference under that designation anywhere else? I've never heard it referred to as the bleed-out theory. I've heard things referred to as an equity strip. You could call it that because what you're doing really is just stripping the equity. You're putting that equity into the property in Florida. You're transferring that equity to Florida so that if this property in entirety is sitting here, and that's what I have to look for in the event that Linda Carp passes away first, my only contingent interest then in that entirety's property, the equity that I could otherwise go towards in Jerome Carp's hands is gone. Well, actually, there's more in that transaction than a transfer of the equity because in a mortgage, ordinarily it's a conveyance, which gets its character from equity, but it's a conveyance of the property to the lender, conditional as it may be. So the issue is a little warning of what I want to hear about. So the issues here are several, and there isn't clear guidance here. The issue of a bleed-out, this theory of an equity strip, is not simply one of my own imaginations. We have facts. We know what took place. But if in Illinois, since you're not giving us any real help in Illinois on the initial question that I asked, what happens when you're dealing with proceeds that are not incorporated into real estate that is characterized as homestead? If we were to assume that Illinois follows what these other jurisdictions seem to say, then it's not a bleed-out if we also assume that the L Trust is for the benefit of both. And the fact that this is simply a pleading is not going to stand by you since you're admitting that, you're urging that. Once you urge that, then we can assume that to be true. And we're no longer bound by the formality of your pleading. We urged in the alternative that if the case, if the facts of this case demonstrate at trial that the intention was to make the Florida property their homestead property, then they could not claim. Why is it a bleed-out if that were the case? Why are they bleeding out if they're simply moving from one tenancy by its entirety to another, using the proceeds of the first to fund the second? Because my lien is attached. My judgment is 2000 of prior would be a prior one to that. But if you're not going with that, you're going with trace. You're attempting to trace, aren't you? Yes. And if you're tracing the transfer of protected assets into another asset, then who says that you then succeed to the priority of your lien? If the issue here is determined by the court is that the proceeds, if sought to be put into the hands of one of the joint tenants in an entirety's property, if the entirety's marker does not follow, then I succeed. Then I can go towards those proceeds, even if they try to move those proceeds into an entirety's property down in Florida, because at that point they're trying to move that property that was in the hands of Linda then into the joint. But then again, I mean, I'm going to go through this once or twice with you all. Well, we've already been around the block on this, because I think it's important to get some clarification here, and we're sort of circular. If we were to assume that the proceeds from the sale of a tenancy by entirety are still protected as an entirety as long as the other four elements are met, it's still husband and wife, simultaneous, et cetera. If that's the case, then the transfer, as you would want to characterize it, and maybe correctly, of the assets of the first entirety, albeit it's in the form of simply lending itself to be added as collateral, but in terms of its dynamic may very well be a conveyance of, a conditional conveyance of the asset itself. Then that asset is still protected, and as such, your rights, if at all, would be not to the original value of these proceeds, but to whatever excess value there may be in the Florida property over and above the collateral value of this property, because this property will still remain protected. I mean, I'm asking a question out of sheer ignorance. I think that the difference in this case is that we don't have a circumstance where the property that was originally the entirety's property here in Illinois was sold, and the assets, the proceeds moved to another property or a bank pending another purchase or some other such. You have a situation. If these proceeds are protected, what difference does that make? I don't think they're protected. And you're not answering that question. I'm trying to. I don't believe they're protected. If this was a pure situation, Your Honor, where you had that circumstance, like the cases that we cited from other jurisdictions, where there was a movement of the proceeds from here to here, and therefore the court could determine that the character of the entirety, based upon the intent of the parties as determined at trial in those cases, was to maintain those assets, those proceeds, as entirety's property. Here we have a different story. We have the cops trying to assert that they are protected here in Illinois by the entirety's label, while at the same time, if they stand before you and argue that they have moved these proceeds by virtue of the mortgage to Florida, that those are also protected, who gets to have two entirety's properties? Who gets to follow those assets? The claim, as I follow your own logic along that score, would be depend on the ultimate release of the mortgage back to the Illinois property. If, in fact, that mortgage was not released, and you are, in fact, correct that the Florida property is a tenancy by entirety, then you would have to show us, and you can't, that Illinois would deviate from the other states to follow the tenancy by entirety through the proceeds into the subsequent investment without calling it a new attempt to provide for a tenancy by entirety after your judgment lien was registered. Now, that argument will only apply against the Illinois property at a point where the mortgage is released. If we would follow your reasoning all the way down the course, then we would have to say that the release of the mortgage is, in fact, a new conveyance, and that new conveyance would be then subordinate to your judgment lien. Am I right or wrong? Don't agree with me because I'm the judge. I understand your reasoning, Your Honor. I don't agree that that's the only circumstance under which I get to a trial on my complaint in this case because the circumstances are such that there has been, under the Fraudulent Transfer Act, an effort to make a transfer, the mortgage, and whether or not you follow that transfer back at the release of that mortgage or whether or not you follow that transfer out, these folks have made an effort to commit a fraud. One more time, if I'm going to interrupt you here because I think I can finish your sentence. Okay. If I can't, you'll have my apologies, and I'll bow out. But your argument is, would only hold water if the proceeds would not otherwise be protected into the Florida property as would be the case under Virginia law and Tennessee law and the law of the other states whose cases you have cited. Because it's not a fraudulent conveyance to Florida. Because on that line of reasoning, they haven't taken unprotected funds and attempted to mask them or launder them to protect them. Your argument, if anything, would have to be specifically directed to the release of mortgage into the Chicago property by saying, this is a fraudulent conveyance, and then I would have to challenge you by saying, what fraud? They never misrepresented what they were doing. The most honest way I can answer that question, Your Honor, is I may not be as smart as you, but I can tell you that my understanding, my theory, and my reasoning in this case, is that if you have a circumstance, as you just outlined, where the party's intention was clear, where you don't have Linda Karp signing that note, but both of them signed the mortgage, where you don't have Linda Karp using a trust, which we believe and we plead it was a sham trust, in order to accomplish this transaction, where you don't have those circumstances going on. Well, they may have used the Linda trust thinking that they were using it as a shield, but they didn't need to. They would have been more protected from your claim if both were the signatories to the sale and both bought the Florida property. Perhaps. Now, is the fact that they might have been devious the same as being fraudulent? If, in fact, they have not altered the status of these funds? I think those are issues of intent, which we have to work across. Well, I don't think devious means fraudulent or fraudulent means devious. Devious may be a path to fraud, but not necessarily. People can outsmart themselves. Yes, I agree. That's possible. They can outsmart themselves. But I believe in this situation there are enough incidents that are pleaded in the complaint that demonstrate that there was an intent to make a transfer to defraud creditors to keep the property in Illinois out of the reach, particularly Jerome Karp's one half of the property, while at the same time allowing Linda Karp. We don't know what the ultimate intent was because we haven't gotten there. But by allowing Linda Karp to use those assets, when they were caught, the bank says, oh, and immediately releases that mortgage back paid by one of the other Karp entities and then cries, well, wait a second, there really wasn't a fraudulent transfer because there's no harm in the fall. We put the property back. We put the encumbrance back in, the equity back in. The focus of the fraudulent transfer is not later on when they decide, you know, well, what are the damages? The focus is was it a fraudulent transfer at the time that the transfer was made? And so we have several issues. Tell me, what was the fraud? What did they do that would have changed the protected status of this tenancy by entirety and what means did they use to accomplish that? I'm interested more in the first part than the second. If we look at the start of this transaction, the first transaction that's complained of, when they transferred the mortgage, when they made the mortgage for the benefit of another entity that is not one of the joint tenant owners of the entirety property, the focus at that point is to strip away. But you can't say that anymore because you have told us And you've committed yourself and urged that the entity for which they lent this collateral was an entity in which they had the beneficial ownership. Only Lynda Karp. The L Trust. Only Lynda Karp had the beneficial ownership. Well, you're urging both. Otherwise, how would you get a tenancy by entirety in Florida without that? I have to plead in the alternative. You have to plead in the alternative? This is your main line argument. There's questions about whether or not I can go after the Illinois property after the tenancy is severed. I believe that the transaction that took place by the making of that mortgage acted to sever that entirety tenancy. Not if we take your judicial admission, if we want to call it that, or you would be judicially estopped, perhaps, from attempting to say at this point that the entity for which this collateral was provided was anything other than a naked legal title holder for the benefit of the marital couple. The Karp's submit to the court at the trial court below by their affidavit that it wasn't their intention to create a homestead in Florida. That it wasn't their intention. Well, I'm going to hear about that, too. But in the meantime, that doesn't release you. Do you now want to switch places? Switch arguments based on which way you think the wind is blowing up here? I'm suggesting to your Honor that how can we determine what the intention of these parties were and make a determination as to the claims that were submitted if we don't have an opportunity to test that intent, to test the facts, at trial. I was knocked out on a joint 2615 and 619 motion without the opportunity to put any of these facts into evidence, to test who's standing closer to the truth. So if we jump to the conclusion that I believe your Honor is suggesting, we're choosing to a conclusion you're providing me with a stepladder very gilded and well put together in your brief. You're telling me what really happened here and that L Hunt was holding it for the carps and that the carps wound up with a homestead in Florida that they're now trying to hide as a vacation home when in fact that's what they were doing and getting back to Chicago to hold you up at the pass so that you shouldn't be able to get back to the Chicago property. That's what you've been telling me. Am I misreading you? I've tried to address that, your Honor. I don't believe that that is an admission. I believe that there's a question of fact as to whether or not that actually occurred. That may be. We'll certainly look at that. But I wanted to make sure that we don't misunderstand the dynamic of your position. There's an issue with regard to the bank's argument that they should have been and were properly dismissed from the case. Good segue. I wanted you to talk about that. The issue with regard to Count Two went away and is not part of this case as I've mentioned in the pleadings. With regard to Count Six and specifically the civil conspiracy count, the question that was put before the trial court by the pleadings was whether or not the bank and the Karps could be held responsible for a civil conspiracy to commit a fraudulent transfer. All right. To commit a fraudulent transfer means, again, that they would both participate in attempting to mask a transaction so that it appears as something other than it is when, in fact, their rights are enhanced by the mask as opposed to by its true nature. Or that the transfer had the effect of taking equity, taking assets that may be reachable by one creditor, and moving those assets away. Right. So the question, I think, still hangs on what it is that they have done here if, in fact, those assets would have been protected in the first instance. So that's a basic question. Then you have the other questions as to what was the bank's intent, what was its state of knowledge. But with these questions, we're getting back closer to factual matters as opposed to matters of law. And I'm going to wait to see what we get from the bank on that. We know that the bank used the equity in the Chicago property to make a determination with regard to the loan-to-value basis for the loan. We knew that the – and we allege that Chicago Community Bank knew that by allowing the equity in that property, in the Chicago property, to be transferred to Florida, it would prevent creditors from reaching that. I have an expectation. For that to be true, they would also have to know that the Florida property was indeed intended to be an entirety, a homestead. No. Because otherwise, what are they doing that's wrong? No. I have – my client has, as a judgment creditor, an inability right now. We're going back to that moment in time. Yeah. An inability at that moment in time to go after the entirety's property in Chicago. But we have a contingent interest because if Linda Karp passes first, then the entirety's label falls away. Sure. Jerome Karp has the entire property. Sure. And my client, with the judgment lien, has the opportunity to go forward towards that equity. Chicago Community knew that those were the circumstances and knew that if they took and participated in the taking of the equity out by virtue of the mortgage and permitting the use of that equity by one of the joint tenants to this property, that that would be – By one of the joint tenants on behalf of both. You cannot escape your own contention. The issue is whether or not they acted with the Karps to try to impress the Chicago property and maintain that property there with the entirety's label, which they have argued, and at the same time trying to suggest that they have moved this property to Florida. But it's not reachable by creditors. I understand that there's an inconsistency in some respects with that notion. But I don't think that the issue that you're suggesting is exclusive of an opportunity to determine that a fraudulent transfer occurred, to determine that an effort to defeat progress Well, I'm finding it quite difficult. I don't mind telling. Obviously, I haven't bottom lined it. But based on your contention, left to my own devices, if I had to interpret the structure of the entire transaction, I'm not saying that I wouldn't encounter problems. But based on your characterization of it, I don't see where the conspiracy starts. You can't conspire to do something that's already correct. You can. You can. I understand that a civil conspiracy can be a conspiracy. I remember from law school, technically, a conspiracy can be wrong, even though the object of the conspiracy is right. But no one has urged that here. Well, on the contrary, Your Honor, we have raised that in our pleading. Well, where is the conspiracy as opposed to a cooperative gesture? When does it become a conspiracy, and when does it become cooperation that serves the mutual interest of both the banks and the cops? Because obviously, if the bank is going to finance this Florida home, this took place before the crash, they would have looked at it as a golden opportunity. Well, they used the golden opportunity to leverage 95% of that $2.3 million Florida purchase, using, in part, the equity in the property here, knowing that the title company had entered a commitment saying, we're not going to insure over the judgment lien of Speer. And then going forward with the transaction, the facts would show, and as pleaded, that they went forward without a title commitment and instead went forward simply to make that loan, again, knowing the facts that they did. They willfully participated and aided in the encumbrance and aided in the transfer. There's a number of other issues that are intricate with regard to the various pleadings, the declaratory judgment and so forth. But Your Honor has zeroed in on the principal issues. Well, you've zeroed me in. You said these were the principal issues. And has given me an opportunity to speak to those. I believe my time is almost up, but I stand for any other questions. I would like to reserve just a few moments, perhaps, for rebuttal. Of course. You will have sufficient opportunity for rebuttal. Thank you. Thank you. May it please the Court, Your Honor. Speaking on behalf of Jerome Carp, one thing you learned in law school when you do arguments is, when you hear how things are going, sometimes you're better off to sit down and take your drink of water and say thank you very much. Well, I've got a few questions for you. No, no, I understand what you're saying. The question really becomes whether or not a mortgage defeats a tenancy by the entirety. That really breaks it down to the most simplest basic element in this case. We could talk about whether or not there's a transfer of equity. Well, I can tell you right off the bat that the fact that this is a mortgage as opposed to a conveyance, does not loom to me to be as large a factor as you might hope it is. Because if you're lending your property as collateral, how do you distinguish from the fact that you're lending, in effect, the proceeds of the acquisition to a borrower through a conveyance? Well, if you look at the law, and that's the troubling portion, there is no law in the state of Illinois that says a collateral mortgage defeats a tenancy by the entirety. This is a novel case, and I appreciate that nature, before the Court that Mr. Sherman brings. Well, is there a question of fact in this case whether it does defeat that? No, I think there's no question at all. I think it does absolutely not defeat the tenancy by the entirety. There's nothing in the statute that claims that mortgages defeat it. If that were the case … What statute are you talking about? The tenancy by the entirety statute. It does not talk about mortgages defeating a tenancy by the entirety. If you look at it in that respect, then you would chill any refinance of any real estate that's owned by the tenancy by the entirety. Because what you would then say … Well, this isn't really a refinance. It's not a refinance, but if you extend it to that. Because, in essence, that's what they're arguing. But that's not … well, that's what they're arguing. They're arguing that they put a mortgage on the property, and they took the equity or they're pulling the proceeds and bring it somewhere else. That's a refinance. So why would there be a release of that mortgage? You had about, what was it, over $700,000, $800,000 tied up in that mortgage. Why would you take it on one day and release it the next? What ghosts were you running from? The bank asked for a mortgage on that property when they bought the Florida property. After the Florida property was refinanced, their mortgage was released. It wasn't needed. Why they took it was a collateral mortgage. I'm going back to the basic question, that there is no law that says that a collateral mortgage or any mortgage taken out defeats or breaks down. This is what they're arguing. They're saying that once that mortgage was reported on the Chicago property, it's no longer tenancy by the … What would happen if that mortgage were foreclosed upon on, let's say, the Florida property? If the bank, if for some reason there was a default in the payments on the Florida property and the bank then went to enforce, to foreclose against the Chicago property? Who would be senior? Who would be junior there? With respect to the mortgage lien and the judgment lien? Yeah. Mortgage lien would be senior. Why would it be senior if the argument is that simply conveying the collateral, using the premises as collateral doesn't alter, doesn't constitute a breakup or conveyance, or that, let's put it this way, the collateralization is not to be viewed as a proceed of the estate? It doesn't. That's the point. Well, then what would happen when there's actual foreclosure against the estate based on a deficiency in the Florida property? At that point, wouldn't that create a scramble to see who gets there first? I believe that because the nature of the tenancy by the entirety still remains and the nature of the debt, the lien, the judgment lien, was against only Mr. Carl. You can't use that to pay. The whole purpose behind the tenancy by the entirety is to protect against an individual of the twos, judgment liens, or other creditors. And if, in fact, you're saying that once there's a foreclosure, all bets are off, then you have to work as one. Well, what would happen, wouldn't this provide a very facile device to transfer and give credence to the fraudulent conveyancing contention, to give credence to the suspicion, at the very least, that the mortgage is simply used as a way to launder the resource out of its current status into a status that wouldn't be protected, but yet retain the mask of being protected? Again, as I was saying earlier, if, in fact, that's the view that Illinois took, because, again, there's nothing reported on that right now, if that's the view that Illinois took, what you would, in essence, be saying, and if I may, just follow up a little bit of this illustration. Well, let me be specific in what I'm talking about. Supposing this was that the funding here was coming from another family member or from a friend, and what you really wanted to do was to pass on the resource of the Chicago property to that particular friend to bypass the judgment. And so you mortgage the property to this friend. Then you default, and you let him foreclose. That transfers that property away and avoids or purports to avoid the right of the judgment creditor, the supremacy of the judgment creditor. Your Honor, in that devious manner, it looks one way. Well, that's what he's saying. But you can't make that generalization. Let's take it as I am a homeowner. I own my house in tenancy by the entirety. I fall behind in my current mortgage, or I just need to refinance to a better rate. And you throw all your closing costs into this mortgage. So now you've shrunk your equity. In his terms, you've let out your equity in order to refinance. If that's the course that this Court would take, that would say that every person who owned a home in tenancy by the entirety, who mortgaged for the benefit of themselves to get a lower rate, and they threw in their closing costs or they hounded their mortgage payments, they had to refinance to keep their home, that breaks the tenancy by the entirety. Unless you also say, and that's a question that Appellant's Counsel was honest enough not to undertake to answer, that under Illinois law, the proceeds of a tenancy by the entirety are also protected. In which event, then, the amount, the diminution in the equity would be translated into the proceed of the loan, and that loan would still be in the hands of the marital couple, so that it would still be protected for that reason, rather than by virtue of the fact that you're dealing with loans as opposed to conveyance. I'm not sure I understood the nature of the question. The fact of the matter is, if you want to cash in the equity of a house, whether it be by sale or by a loan, arguably that would destroy the tenancy by entirety as to the proceeds, be it the purchase price that you receive or the loan. Unless you said that since these proceeds still remain under the control of the marital couple, they retain the protection of a tenancy by entirety by virtue of that fact alone. I agree with that. Let's start with I agree with that. But that's the case in any time. So if you agree with that, then the horrible that you're parading, that if we said this, that if the transfer of collateral were bleeding out, as counsel wants to call it, then nobody can take out an equity loan, disappears. Yes, they can take out an equity loan, not because an equity loan doesn't count as a transaction, but because the equity loan gets into the same possession of a marital couple and remains protected on that basis. So then you're asking each and every collection courtroom to then determine on a case-by-case basis, again, using my parade of horribles with the world coming in on collections, say you refinance your, what's to say that paying three months of back mortgage or rolling in closing costs or paying the broker's fee or cashing out to send your kid to college then becomes, you know, you've got a house that is equity. You need to pay tuition. You take out an equity line and you remortgage your property. If counsel's argument is correct that the mere mortgage on a property defeats the tenancy by the entirety, then you're not going to be able to use that to pay for college. No, but you're protected by virtue of having control of the proceeds. Who decides what that control is? You're then looking at a case-by-case basis by merely saying that mortgages by themselves don't, which I believe, mortgages by themselves do not defeat the tenancy by the entirety. If you add a layer, again, none of this is in any case law, none of this is any statute, you're then saying every time you do that, yes, it's protected, only if then each judge across the street is going to have to go through a litany to decide was it for the benefit control of both parties? Is the closing cost of benefits control? You're then going to have numerous issues. That's why I think the courts rightfully and the statutes rightfully stayed away from that issue, saying that a mortgage in and of itself does not constitute a defeat of the tenancy by the entirety, and nothing that CARPS did in this instance defeated the tenancy by the entirety. Notwithstanding the fact that what Judge Epstein said at the very end is the house, the tenancy by the entirety house today is in the same position as it was before all this began, and he calls it the no harm, no fault. But it's a reconstructed tenancy for which counsel, for which your opponent says they now have succeeded to the senior position because what was junior when this transaction started out becomes senior during the interval before the release. Only if this court says that any mortgage, especially this mortgage, defeated the tenancy by the entirety, because then there's no reconveyance or reconstitution of the tenancy by the entirety if in fact the tenancy by the entirety was never destroyed, which goes back to the premise that a mortgage It's an interesting question, and as you say, there doesn't seem to be And I appreciate that. The only authority here is authority by analogy, and the analogies are quite sparse. Again, as Mike should also, my mentor initially would say, I don't necessarily want to hear Jeff Deere on the law. Show me the case first. Anything else? For the questions, I yield and bring my time to the back. Good morning. Please support. Chicago Community Bank financed the acquisition of the Florida property. It took as additional collateral the Chicago property. It placed the mortgage signed by Mr. and Mrs. Carp, both of whom waived their homestead right, on the Chicago property. It took the mortgage subject to the judgment lien. In this discussion, it seems to me that that may have been Did they waive their homestead right? Yes. And took it subject to the judgment lien. And took it subject to the judgment lien. It was additional collateral. Well, why am I not hearing somebody here shouting about that? That's what I'm wondering. The council has put this moniker of civil conspiracy loaded with innuendo. That's something that the banks did something surreptitiously. That mortgage is public record just as his judgment lien is. The bank wasn't trying to do anything. It was additional collateral. Why was the mortgage released as far as the record is concerned? I'm not asking for testimony. But does the record reflect why this mortgage was released in favor of some additional financing obtained in Florida? That I don't know, Judge. Whether it was paid off, if the facility was paid off, if the Florida property had been refinanced, the facility would have been paid off, and the security instruments released. Contrary to counsel's assertion here, had the plaintiff-judgment creditor So the two of you are not in bed with each other. You're really in I'm trying to get the record straight here. But your argument is antagonistic to your co-defendant. I'm not trying to be. I'm just trying to get it straight here. I understand. I'm using it as a mechanical term. To the extent that what I'm saying may contradict some things, it may be basically on the facts, I think, and the interpretation. You asked counsel whether or not if there had been a default in our facility, in our loan, and we foreclosed, whether we could foreclose the judgment creditor. Counsel indicated no. We all know the correct answer. Counsel indicated yes. We know the answer is no. I could not foreclose the judgment creditor's lien. Mortgage Foreclosure Act. I cannot foreclose a senior interest. In which event, nothing has been healed by the release of the mortgage. Isn't that right? It's all moot. The mortgage is gone. Moot is to the bank. But it's all moot as to the defendants. Wouldn't it be all moot as to the defendants? They've released their advantage on the tenancy by entirety. And the fact that the loan has now been restored does not restore it because it becomes a new acquisition but subordinate to the prior rights of the preexisting judgment creditor. Whatever they may be on this property. I may take an exception, if my colleagues agree, to give the defendants a moment in rebuttal on that. So the trial court properly finds on a 2615 motion, Chicago Community Bank did not, there are no facts that would amount to a civil conspiracy claim against Chicago Community Bank. It lent money. It took a security interest. Properly executed. Properly perfected. Subject to the claims of this creditor. It did not usurp any position. It always had that position relative to the senior claim. When our lien is gone, our mortgage is gone, he's right back to where he was. Whether or not he can foreclose this property because it's a tenancy or by the entirety of it, Once their priorities are waived on the tenancy by entirety, it falls, one would think, to the junior creditor now a sense to the senior position. My point here, Judge, is that he was never junior to me. I've always been junior to him. Now I don't even exist. If I don't exist, why am I here? And I think the trial court recognized that. Well, you were junior, but the tenants weren't. Because their rights were protected by virtue of being a tenancy by entirety, and you were carried along by their rights. Perhaps what counsel was thinking is that I could, on a default under that obligation, foreclose, because I had a mortgage, a consensual mortgage conveyed by the parties in interest, both. So I could foreclose that. He can't. That's been his problem. But if you foreclose, you still take... I can't knock him out. And that's it, Judge. Well, let's find out before we... You'll have rebuttal against both. I'll give you, if my colleagues agree, my panel, I'll give you a minute or two to respond to that. Because, frankly, it's a surprise. No, no, what he's saying, if I may, and, again, I'm a visual person, so I wish I could just be able to do this. You have a tenancy by the entirety. You've got his lien. His mortgage was subordinate to the lien. It's not saying that the, again, the question that I'm raising is whether or not the mortgage... What I heard from the counsel's mouth was that the tenants by entirety waived their protection as tenants by entirety. No, they didn't. What they did was the bank took the loan subject to the judgment lien. It doesn't mean that they waived the rights of the tenancy by the entirety. Those are two separate animals. For purposes of title insurance, you can say, you know what, we're not going to argue here. We're just going to agree that our mortgage, because of its collateral nature, we're just going to accept the fact that we're going to take subject to. And they're entitled to do that. Just because they take subject to doesn't damage or destroy the tenancy by the entirety. If that, I see, for the record, your co-counsel is shaking his head, I'm glad for that clarification. I think we can proceed with the rebuttal. Shaking his head in assent, I should say. The problem, the problem... How does the bank really stay here? I'm sorry? How does the bank stay here in any way, shape, or form? The bank stays here if the court believes that the proceeds of the tenancy by the entirety don't follow, if ultimately the facts in this case were to demonstrate that the mortgage and the proceeds of that mortgage were used solely for the benefit of one of the joint tenants. But if they're taking, if the mortgage was subject to your judgment, I don't see how there's any conspiracy in any way involving the bank. If the bank knows that if they foreclose on that mortgage and seek to take the property, the Chicago property, and take the value of that collateral for the benefit of their loan, I can't proceed against that collateral. I can't proceed in that action. I don't have a waiver of the tenancy by the entirety. I don't have the ability to proceed. If everything you're saying is true, I don't see how that makes them a conspirator. Well, that's not... Or even an allegation that they've conspired with the CARPs. They know the debts that the CARPs have, including Jerome CARP. They know that the property is alleged to be entirety's property. They know that they are taking a note from only one of the entirety's joint tenants. They are aware that the title company, from the title company, will not insure over the interest and, therefore, proceed forward with this loan. But you're talking about them doing things that they could do. I don't know that that could ever lead to conspiracy. If the conspiracy... In fact, when they didn't do any of that and the mortgage has been released, I really do think there's a serious question about mootness, but I think there's a more serious question about being able to plead a conspiracy as far as the bank is concerned. I think the issue is one of damages versus one of liability because if, in fact, the bank, by simply releasing its mortgage once caught and saying, oh, all right, forget it, we'll just walk away from this. Once caught doing what? Once caught having made that mortgage under the circumstances that we've pleaded. For what purpose? Is your whole claim based on the fact that even though they're not doing themselves any good, they were giving aid to the carps to maintain their protected position against you? Yes. And where are they doing that? Where are they doing it? How are they doing that? Well, they're doing that by aiding the carps in removing the equity from their property. Had they not been caught, that mortgage would have subsisted. Now, my client would have been frustrated. And does that hold up again even if the L Trust holds for the benefit of both the marital couple? I think it is because if the conspiracy was to create the mask, if you will, to create the sham that there is a tenancy by the entirety property here in Chicago that you cannot touch, but then to move that ball around and if you go after the property of Florida, oh, but that's different. That's, you know, to assist these debtors in moving funds around at will, or should I say at a whim, I think that's the issue. Counsel, if I give you another minute, is that enough, or are you finished now? I stand for any other questions that the panel has. I appreciate the opportunity to speak with you today. Thank you very much, gentlemen. It was a very interesting case and very well presented and will be taken under advice.